IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA BARRICK, as Special Administrator of the ESTATE OF BOBBY DALE BARRICK, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-23-129-JFH-GLJ ) ) |
| BOARD OF COUNTY COMMISSIONERS OF McCURTAIN COUNTY, OKLAHOMA; SHERIFF OF MCCURTAIN COUNTY, in his official capacity; DEPUTY MATTHEW KASBAUM; DEPUTY QUENTIN LEE; DEPUTY KEVIN STOREY; and, WARDEN MARK HANNAH, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

### RESPONSE OF DEFENDANTS MATTHEW KASBAUM AND QUENTIN LEE TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION

COME NOW Defendants Matthew Kasbaum and Quentin Lee ("Defendants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 72, hereby submit their Response in Opposition to Plaintiff's Objection to Report and Recommendation (Doc. 226). Plaintiff Barbara Barrick ("Plaintiff") seeks to set aside Judge Gerald L. Jackson's Report and Recommendation (Doc. 224). However, as set forth in the Report and Recommendation, Plaintiff has failed to establish that the Defendants were acting under color of state law, an essential component[1] of 42 U.S.C. § 1983 actions, during this incident. Her Objection to the Report and Recommendation does not bring to light any significant facts or law that would controvert the clearly established determination that Defendant Officers wholly lacked state law authority during the encounter with an Indian in Indian country. Instead, Plaintiff rehashed faulty arguments she has already made and

---

[1] That a defendant has "acted 'under color of state law,' [is] a jurisdictional requisite for a §1983 action." *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981).

that were thoroughly considered by Judge Jackson when he wrote his Report and Recommendation.

## INTRODUCTION

The question before this Court is whether the cross-commissioned and duly appointed Tribal Police Officers were acting under color of tribal law or state law (i.e. state or tribal authority) as they attempted the arrest of an Indian (Bobby Barrick, "Barrick") in Indian country. 42 U.S.C. § 1983 was designed to address "the unwillingness or inability of the state governments to enforce their own laws against those violating the civil rights of others." *D.C. v. Carter*, 409 U.S. 418, 426, 93 S. Ct. 602, 607, 34 L. Ed. 2d 613 (1973). In *Ross v. Neff*, the Tenth Circuit clearly established that state law enforcement officers have no law enforcement jurisdiction whatsoever over "Indians in Indian country." 905 F.2d 1349, 1353 (10th Cir. 1990) (holding that an arrest by deputy sheriff outside his jurisdiction, i.e., in Indian country, violated the Fourth Amendment.) Further, "states [lack] independent authority to enforce their own laws over Indians on Indian land." *Id*. In *Ouart v. Fleming*, 2010 WL 1257827, at *7 (W.D. Okla. Mar. 26, 2010), the Court concluded that tribal officials are considered agents of the state "**only if** they act jointly with, under the direction of, or on behalf of the government." Based on this, Judge Jackson correctly reasoned that a state official can be considered an agent of the tribe only if they act jointly with, under the direction of, or on behalf of the tribal government. Here, there is no dispute that the Defendants were cross-commissioned through the Choctaw Nation pursuant to the Deputation Agreement. This Deputation Agreement specifically granted tribal authority to the Defendants to make arrests of Indians within Indian country. (Docs. 195-28; 195-38). Because the Officers were cross-commissioned, duly appointed Tribal Police Officers with the Choctaw Nation, Bobby Barrick was a member of the Choctaw Tribe, and this attempted arrest took place in Indian Territory, Judge Jackson correctly concluded that the Defendants were acting under color of tribal law, not state law. Accordingly, Judge Jackson's Report and Recommendation should be adopted and Ordered by this Court.

## ARGUMENTS AND AUTHORITIES

Plaintiff's Objection does not meaningfully refute anything in Judge Jackson's opinion or point to any case law that gives the Court reason to question Judge Jackson's well-reasoned opinion. Instead, Plaintiff continues to rely on the same conclusory and unsupported allegations she asserted in her underlying brief. Plaintiff first outlines the "applicable law", which is simply a

regurgitation of her argument from her original Response to the Defendants' Motions for Summary Judgment, which has already been fully refuted in the Defendants' Reply. (Doc. 217, pp. 13-14). For the sake of brevity, Defendants will not restate arguments that are already fully briefed.

Plaintiff continues to argue that somehow these Officers exercised power possessed by virtue of state law. This statement blatantly ignores that the Defendants' power is actually derived from Deputation Agreement with the Choctaw Nation. (Doc. 195-38). This Deputation Agreement vests cross-commissioned officers with the authority under tribal law to respond to situations involving Indians in Indian country. If not for these cross-commissions, these Defendants would not have had the authority to take any action with regard to Barrick. *Ross v. Neff,* 905 F.2d 1349, 1353 (10th Cir. 1990). Therefore, it is clear that during their interactions with Barrick, Defendants were acting jointly with, under the direction of, or on behalf of the Choctaw Nation. Accordingly, they must have been acting under color of tribal law, not state law.

Plaintiff also continues to rely on cases that address ***private v. state action*** (i.e., private v. government authority), which do not speak to the overriding question in this case, which is what official duties took precedent. (Doc. 224, p. 12 (collecting cases). There is no question of whether these Officers were acting with some authority or no authority. These officers quite plainly had authority. The question in this case is where that authority was derived from. As explained in Defendants' underlying brief, their authority was completely derived from their tribal commissions under the Deputation Agreement, as they would have had no authority without such commissions. But for Defendants' tribal commissions, it would have been unlawful and unconstitutional for Defendants to arrest or seize Barrick. *Ross v. Neff,* 905 F.2d 1349, 1353 (10th Cir. 1990).

**I.    Judge Jackson Did Not Ignore "Highly Pertinent Facts."**

Plaintiff argues that in considering the Motions for Summary Judgment, Judge Jackson ignored 27 of Plaintiff's 32 additional facts bearing on the color of state law issue.[2] (Doc. 226, p.6). Plaintiff mistakenly suggests to this Court that Defendants had no objection to these facts. This is patently false. In Defendants' Reply briefs, Defendants specifically state that as the moving parties, they are not required to respond to these additional facts and that by not replying to each

---

[2] As a preliminary matter, Defendants must object to Plaintiff's use of lengthy, substantive footnotes throughout her brief, as it is a transparent attempt to circumvent the page limit imposed by the Court's rules. Rather than using footnotes for limited purposes, Plaintiff has packed them with dense arguments, effectively creating a parallel brief within the margins.

one, they are not conceding the veracity or relevance of these additional facts. (Doc. 214, p. 4; Doc. 217, p. 12). Defendants also took issue with many of Plaintiff's additional facts, as lacking proper evidentiary support. (Doc. 214, p. 2; Doc. 217, p. 1).

Plaintiff cites to *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) as holding that Courts must "accept as true all material facts asserted and properly supported in the summary judgment motion." In *Reed*, Defendant employer filed a Motion for Summary Judgment, to which the Plaintiff employee did not respond. The Court held that a non-party's failure to file a response is not sufficient to enter judgment and the Court must still undertake an additional determination that summary judgment is appropriate. As part of that determination, the Court found "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Id.* Although it is not clear from Plaintiff's Objection, it appears that she is (mistakenly) arguing that Defendants did not object to her additional facts and the Court should treat her additional facts as true. If this is the point that Plaintiff is attempting to make, she is mistaken in several respects. First, she is not the moving party and was not asking for judgment. Second, Defendants, as the moving party, are not required by Fed. R. Civ. P. 56 or LCvR 56.1 to respond to these "additional facts." Finally, Defendants did object to Plaintiff's additional facts and specifically stated that by not individually responding to them, they were not conceding the veracity or relevance. *Reed* is not applicable to the instant case, as the issue in that case was the granting of summary judgment where the non-moving party failed to respond to the facts in the Motion. Here, Defendants were the moving party and Plaintiff did respond (albeit, late) to the Motions.

Finally, even if Plaintiff's additional facts are considered, the facts do nothing to change the results. The Plaintiff admits that the Defendants were all cross-commissioned Officers under a Deputation Agreement with the Choctaw Nation, a separate, sovereign tribal nation. To argue that a Court must consider all facts asserted by Plaintiff in her Response despite their lack of relevance or lack of evidentiary support is preposterous and Plaintiff's argument on this point should be disregarded.

## II. Judge Jackson's Well-Reasoned Report and Recommendation Relied on Well Established Premises to Support his Conclusion that Defendants Were Not Acting Under the Color of State Law.

Plaintiff's remaining arguments boil down to her belief that Defendants must have been acting pursuant to state authority, and therefore under the color of state law. However, Plaintiff's arguments do not offer a coherent response to Judge Jackson's well-supported conclusions.

First, Plaintiff claims that Judge Jackson "erroneously relies upon the premise that 'state courts generally have no jurisdiction to try Indians for conduct committed in Indian country.'" (Doc. 226, p. 7). However, Plaintiff does not give any reason as to why Judge Jackson's reliance on this well-established rule is erroneous. The only support that Plaintiff offers for this belief is cherry picked quotes from *Oklahoma v. Castro-Huerta,* 597 U.S. 629 (2022), and *State v. Brester*, 531 P.3d 125, 137-38 (Okla. Crim. App. 2023). Plaintiff provides no reasoning as to how either of these cases support her conclusions. Neither of these cases contradict the well-established premise that the State does not have criminal jurisdiction in Indian county except in limited circumstances, such as crimes committed by non-Indians, in Indian country. *Castro-Huerta,* 597 U.S. 629 (2022); *Ross v. Neff*, 905 F.2d 1349, 1352 (10th Cir. 1990); *McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020); *Nevada v. Hicks,* 533 U.S. 353 (2001) ("although Indian reservations are located within the territory of the State, States presumptively lack both civil and criminal jurisdiction over tribal members for activities that occur within reservation boundaries."). There is no dispute in this case that Barrick is an Indian and thus does not fall within one of these limited circumstances. Plaintiff offers no logical explanation for how the Supreme Court's ruling in *Castro-Huerta*[3] somehow gave the State jurisdiction over Indians (such as Barrick) in Indian country.

Plaintiff next argues that Judge Jackson erred in finding that the Defendants' authority was derived from the Choctaw Nation, not the State of Oklahoma, as this finding assumes the existence of tribal authority results in the removal of all state authority. Judge Jackson did not assume anything. He thoroughly considered whether an officer retains state authority while exercising tribal authority and concluded that the question was "once of primacy, not numerosity." (Doc. 224, p. 10). Judge Jackson emphasized that the overriding question in this case was which official duties

---

[3] The obvious key distinction being that Castro-Huerta was a Non-Indian. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022).

took precedent. (Doc. 224, p. 12). Plaintiff concedes that the Officers were not acting solely under the color of state law. (Doc. 224, p. 12). Plaintiff also has cited to no evidence or case law that contradicts that these Defendants only had jurisdiction over Barrick due to their tribal commissions. In this case, the Defendants only had proper authority because of their status as duly appointed tribal commissioned Officers pursuant to the Deputation Agreement. Because Defendants were acting jointly with, under the direction of, or on behalf of the Choctaw Nation, these official duties took precedent.

Plaintiff's continued reliance on her belief that Defendants were wearing "two hats" at the time of the arrest and thus, were acting under the color of state law fails for similar reasons. Again, Plaintiff ignores the relevant question—which official duties took precedence. (Doc. 224, p. 12). The only reason that these Defendants even had any authority over Barrick was due to their tribal commissions, meaning it was their tribal authority, not their state authority, that allowed them to undertake law enforcement action during these interactions with Barrick. Plaintiff also claims that it is widely understood that "a cross-deputized officer can have authority to simultaneously act under the state's law, the tribe's law, and the federal government's law." However, her only support for such statement is her own exhibit, which is not binding on this Court, nor does it actually address the core issue, which is which official duties took precedence. (Doc. 224, p. 12). As a matter of clearly established law, it would have been illegal for Defendant Officers to "wear a state hat" as they arrested Barrick (Indian) in Indian country. *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).

Finally, Plaintiff argues that Judge Jackson "effectively held that if Defendants exercised any tribal authority, it result[s] in the total absence of state color." (Doc. 226, p. 8). Like her previous arguments, it is again unclear how such a statement supports any conclusion that these Defendants acted under authority granted to them by state law, not tribal law. As Judge Jackson pointed out, the question is whether Defendants were acting jointly with, under the direction of, or on behalf of the Tribe. The facts show that shortly after the Defendants arrived, the Defendants found out Barrick was a tribal member. (Doc. 165, p. 6, ¶ 17). Due to his status, the Defendants did not have "any jurisdiction whatsoever"[4] over Barrick through McCurtain County Sheriff's Office or the State, but instead only had such jurisdiction through their tribal commissions. (Doc.

---

[4] *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).

165, p. 6-7, ¶¶ 17-19). Their knowledge of jurisdiction is further supported by the fact that they called a tribal officer to further assistance them. (Doc. 165, p. 7, ¶ 19). Accordingly, there can be no doubt that they were acting jointly with, under the direction of, or on behalf of the Choctaw Nation.

Plaintiff goes on to cite 11 O.S. § 34-103(C), the State-Tribal Relations Act, and two Oklahoma Attorney General opinions as apparent support for her belief that Defendants were acting under the color of state law. However, none of these authorities even remotely address that issue. 11 O.S. § 334-103(C) addresses intergovernmental agreements between municipalities and counties, which are fundamentally different that any agreement between a county and a tribe or a state law enforcement agency and a tribe. The State Tribal Relations Act outlines the State's ability to enter into agreements with the tribes, and again does not ever address the issue of officers acting under the color of state law. Finally, Plaintiff cites to two Attorney General Opinions. The first Attorney General Opinion is not even related to tribal jurisdiction. *See* 2000 OK AG 58. The second Attorney General Opinion addresses whether cross-deputation agreements violate Article II, Section 12, of the Oklahoma Constitution.  1990 OK AG 32. Again, this opinion does nothing to support Plaintiff's position. If anything, it further supports the position that these Defendants only had authority to act in this scenario due to the cross-commission Agreement, as the Opinion specifically states that cross-commission agreements permit officers to "conduct additional activities which, absent such agreement, the officers would be powerless to carry out." *Id.* at ¶ 27. Additionally, this Opinion directly finds that state law enforcement officers, absent an appropriate cross-deputation agreement can only investigate a federal or tribal crime inside Indian country as a private citizen and cannot operate as a law enforcement officer making arrests. *Id*. at ¶¶ 41-42.

Plaintiff's final assertion, that a cross deputation agreement alone is insufficient to transform a state officer into a tribal actor, is based entirely on a single, out of context quote from *Ouart v. Fleming,* 2010 WL 1257827 at *7. (Doc. 226, p. 8). But Plaintiff fails to explain how this single statement applies to the facts of this case, in which the **only** reason the Defendants had authority over Barrick was due to the powers conferred onto them by the Choctaw Nation itself. These Defendants' authority was derived solely from their status as cross-commissioned Officers.

Plaintiff's objections consist of isolated case quotes and unsupported conclusions, none of which meaningfully address or undermine Judge Jackson's well-reasoned analysis and opinion. Judge Jackson correctly concluded that Barrick's status, as a tribal member, and the Defendants'

7

status as tribal commissioned cross-commissioned Officers is the determinative factor in this case. It was tribal law, not state authority, which gave these Defendants authority to exercise jurisdiction over Barrick (an Indian) in Indian country. Plaintiff fails to provide any authority that contradicts this central reasoning in any coherent or persuasive manner. Her objections should be overruled and Judge Jackson's Report and Recommendation should be adopted in full.

### III.   Remedies

Although not addressed by the Plaintiff, Defendants acknowledge the question raised by Judge Jackson regarding potential remedies. While at the time of oral argument, Defendants were unable to articulate specific remedies that might be available to Indians in Indian country after *McGirt,* counsel did indicate the existence of various potential remedies. This includes potential tribal remedies. The Choctaw Nation of Oklahoma's Senior Executive Officer Legal and Compliance explained, "[t]ribal members have many avenues to pursue justice, including through our robust Tribal court system. Maintaining these avenues is an important part of expressing our sovereignty." Justin Ayer, *Tulsa Attorney Believes Lawsuit Will Be Another Landmark Case Amid McGirt,* KJRH (Jul 16, 2025), https://www.kjrh.com/news/local-news/tulsa-attorney-believes-lawsuit-will-be-another-landmark-case-amid-mcgirt. Since each tribe maintains their sovereignty, these potential remedies will largely depend on the independent tribe, their Constitution, and the cross-commission agreement in question. Tribal members have rights that are guaranteed to them by their Tribe's Constitution. Tribes have the power and authority to fashion remedies for similar cases as this, as is part of their powers as sovereign nations.

Counsel recognizes, like Judge Jackson did, that the correct legal conclusion, particularly in cases involving jurisdiction in Indian country, sometimes leaves certain gaps in the law. *Ross v. Neff,* 905 F.2d 1349, 1353 (10th Cir. 1990) ( "[w]e are bound to follow the law as we find it irrespective of the apparent 'void' this will leave in safeguarding the rights of the traveling public") (quoting *Application of Denetclaw,* 320 P.2d 697 (Ariz. 1958)). However, the correct legal conclusion should still prevail. It is the role of the tribal and federal legislature to fill any gaps in available remedies with legislation, as needed.

For the foregoing reasons, the Court should overrule Plaintiff's Objection and adopt Judge Jackson's comprehensive Report and Recommendation in its entirety. Judge Jackson carefully considered all briefing and arguments made at the hearing. His Report and Recommendation is grounded in both the facts of this case and the applicable and clearly established case law.

Plaintiff's Objection is nothing more than a rehashed version of the arguments that were already made, thoroughly considered, and ultimately rejected by Judge Jackson. She does not provide any specific reason as to why Judge Jackson's findings should be disturbed. Accordingly, Defendants ask that this Court adopt Judge Jackson's Report and Recommendation in full and dismiss all Plaintiff's claims against them with prejudice.

Respectfully submitted,

s/Sheila G. Jessee
Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
Sheila G. Jessee, OBA No. 33071
Jessica James Curtis, OBA No. 35140
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone:  (405) 235-1611
Facsimile:   (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com
sjessee@piercecouch.com
jjamescurtis@piercecouch.com
***Attorneys for Defendants Matthew Kasbaum, Quentin Lee***

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2025, I electronically transmitted the attached document to the Clerk of Court via the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

s/ Sheila G. Jessee
Sheila G. Jessee
