# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA BARRICK, as Special Administrator of the ESTATE OF BOBBY DALE BARRICK, deceased,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF McCURTAIN COUNTY, OKLAHOMA; SHERIFF OF MCCURTAIN COUNTY, in his official capacity; DEPUTY MATTHEW KASBAUM; DEPUTY QUENTIN LEE; DEPUTY KEVIN STOREY; and, WARDEN MARK HANNAH,<br><br>Defendants. | Case No. CIV-23-129-JFH-GLJ<br>Magistrate Judge Gerald L. Jackson |

## RESPONSE OF DEFENDANT MARK HANNAH TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION

COMES NOW Defendant Mark Hannah ("Defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 72, hereby submits his Response to Plaintiff's Objection to Report and Recommendation (Doc. 226). Plaintiff Barbara Barrick ("Barrick") seeks to set aside Judge Gerald L. Jackson's Report and Recommendation (Doc. 224). However, as set forth in the Report and Recommendation, Plaintiff has failed to establish that the Defendants were acting under color of state law, an essential component[1] of 42 U.S.C.

---

[1] That a defendant has "acted 'under color of state law,' [is] a jurisdictional requisite for a §1983 action." *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981).

§1983 actions, during this incident. Her Objection to the Report and Recommendation does not bring to light any significant facts or law that would convert the clearly established determination that Defendant Hannah wholly lacked state law authority during the encounter with an Indian in Indian country. Instead, Plaintiff rehashed faulty arguments she has already made and that were thoroughly considered by Judge Jackson when he wrote his Report and Recommendation.

## INTRODUCTION

The question before this court is whether the cross-commissioned and duly appointed tribal police officers were acting under color of tribal law or state law (i.e. state or tribal authority) as they attempted the arrest of an Indian (Bobby Barrick) in Indian Country. In *Ross v. Neff*, the Tenth Circuit clearly established that state law enforcement officers have no law enforcement jurisdiction whatsoever over "Indians in Indian country." 905 F.2d 1349, 1353 (10th Cir. 1990) (Tenth circuit held arrest by deputy sheriff outside his jurisdiction, i.e., in Indian country, violated Fourth Amendment.) Further, "states [lack] independent authority to enforce their own laws over Indians on Indian land." *Id.* In *Ouart v. Fleming*, 2010 WL 1257827, at *7 (W.D. Okla. Mar. 26, 2010), the Court concluded that tribal officials are considered agents of the state "**only if** they act jointly with, under the direction of, or on behalf of the government." Applying that standard to this matter, a state official can be considered agent of the tribe only if they act jointly with, under the direction of, or on behalf of the government. Because Defendant Hannah was a duly appointed tribal commissioned police officer with the Choctaw Nation, Bobby Barrick was a member of the Choctaw Tribe, and this attempted arrest took place in Indian Territory, Judge Jackson correctly concluded that the Defendants

were **acting under color of tribal law**, not state law. Accordingly, Judge Jackson's Report and Recommendation should be adopted and Ordered by this Court.

## ARGUMENTS AND AUTHORITIES

Plaintiff's Objection does not meaningfully refute anything in Judge Jackson's opinion or point to any case law that gives the Court reason to question Judge Jackson's well-reasoned opinion. Instead, Plaintiff continues to rely on the same conclusory and unsupported allegations she asserted in her underlying brief. Plaintiff first outlines the "applicable law", which is simply a regurgitation of her argument from her response, which has already been fully responded to in Defendant Hannah's Reply (Doc. 214, pp. 8-10). For the sake of brevity, Defendants will not restate arguments that are already fully briefed.

Plaintiff's only addition to the law that she believes is applicable is her citation to *Ouart v. Fleming*, No. CIV-08-1040-D, 2010 WL 1257827, at *7 (W.D. Okla. March 26, 2010). However, Plaintiff only focuses on a small portion of the Court's opinion in *Ouart* and ignores the portions that Judge Jackson relied on in his Report and Recommendation. Specifically, that *Ouart* also stands for the idea that acting in conjunction with state authorities can make a tribal officer considered an agent of the state and the same rule applies in the inverse. *Id.* at *7. As Judge Jackson reasoned, in this case the Defendants acted on behalf of the Choctaw Nation and thus, under tribal law. (Doc. 224, p. 10).

Plaintiff also continues to rely on cases that address ***private v. state action*** (i.e., private v. government authority) and even claims that Judge Jackson erred in implying that that certain rules only apply in cases distinguishing private action from state action. But the cases cited by Plaintiff do nothing to show how this was an error on Judge Jackson's part, particularly when

it comes to Plaintiff's belief that an alleged "lack of actual state authority is not determinative." *See, e.g. Romero v. Peterson*, 930 F. 2d 1502 (10th Cir. 1991) (addressing whether tribal officers should be considered federal officers for the purpose of a Bivens' claim and holding that the officers in question are only federal actors if "they act jointly, under the direction of, or on behalf of the federal government.) There is no question of whether these officers were acting with some authority or no authority. These officers quite plainly had authority. The question in this case is where that authority was derived from, and as explained in Defendant's underlying brief, his authority was completely derived from his tribal commissions, as he would have had no authority without such commissions. But for Defendant Hannah's tribal commissions, it would have been unlawful and unconstitutional for Defendant Hannah to act under color of state law vis-à-vis Barrick. *Ross v. Neff,* 905 F.2d 1349, 1353 (10th Cir. 1990).

**I.      Judge Jackson Did Not Ignore "Highly Pertinent Facts."**

Plaintiff argues that in considering the Motions for Summary Judgment, Judge Jackson ignored 27 of Plaintiff's 32 "additional facts" bearing on the color of state law issue. (Doc. 226, p.6). Plaintiff mistakenly suggests to this Court that Defendants had no objection to these facts. This is patently false. In Defendant's Reply brief, he specifically states that as the moving party, he is not required to respond to these additional facts and that by not replying to each one, he is not conceding the veracity or relevance of these additional facts. (Doc. 214, p. 4). Defendant also took issue with many of Plaintiff's additional facts, as lacking proper evidentiary support. (Doc. 214, p. 2). Additionally, many of Plaintiff's "additional facts" that he refers to were not relevant or material to the claims against Defendant Hannah and were directed towards other Defendants. (Doc. 214, p. 4).

Plaintiff cites to *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) as holding that Courts must "accept as true all material facts asserted and properly supported in the summary judgment motion." In *Reed*, Defendant employer filed a Motion for Summary Judgment, which the Plaintiff employee did not respond to. The Court held that a non-party's failure to file a response is not sufficient to enter judgment and the Court must still undertake an additional determination that summary judgment is appropriate. As part of that determination, the Court found "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Id.* Although it is not clear from Plaintiff's objection, it appears that she is (mistakenly) arguing that because Defendant did not object to her additional facts, the Court should treat her additional facts as true. If this is the point that Plaintiff is attempting to make, she is mistaken in several respects. First, she is not the moving party and was not asking for judgment. Second, Defendant, as the moving party, is not required by Fed. R. Civ. P. 56 or LCvR 56.1 to respond to these "additional facts." Finally, Defendant did object to Plaintiff's additional facts and specifically stated that by not individually responding to them, they were not conceding the veracity or relevance. *Reed* is not applicable to the instant case, as the issue in that case was the granting of summary judgment where the non-moving party failed to respond to the facts in the Motion. Here, Defendant was the moving party and Plaintiff did respond (albeit, late) to the Motion.

Finally, even if Defendant did not dispute Plaintiff's additional facts, and even if they possessed proper evidentiary support, the additional facts do nothing to change the result. To

argue that a Court must consider all facts asserted by Plaintiff in her Response despite their lack of relevance or lack of evidentiary support is preposterous and Plaintiff's argument on this point should be disregarded.

**II.     Judge Jackson's Well-Reasoned Report and Recommendation Relied on Well-Established Premises to Support his Conclusion that Defendants Were Not Acting Under the Color of State Law.**

Plaintiff's remaining four sections of her Response all purport to address different issues she has with Judge Jackson's Report and Recommendation, and his legal reasoning as related to what authority the defendants were acting pursuant to. Plaintiff's remaining sections, much like her previous briefing in this case, are convoluted and unpersuasive. Her four points boil down to her belief that Defendants must have been acting pursuant to state authority, and therefore under the color of state law. However, Plaintiff's arguments do not offer a well-reasoned response to Judge Jackson's well-supported conclusions and instead presents her same flawed theories from her underlying briefing in a choppy, disconnected manner. This further underscores Plaintiff's utter lack of support for her claims.

First, Plaintiff claims that Judge Jackson "erroneously relies upon the premise that 'state courts generally have no jurisdiction to try Indians for conduct committed in Indian country.'" (Doc. 226, p. 7). However, Plaintiff does not give any reason as to why Judge Jackson's reliance on this well-established rule is erroneous. The only support that Plaintiff offers for this belief is cherry picked quotes from *Oklahoma v. Castro-Huerta,* 597 U.S. 629 (2022), and *State v. Brester*, 531 P.3d 125, 137-38 (Okla. Crim. App. 2023). Plaintiff provides no reasoning as to how either of these cases support her conclusions. Neither of these cases contradict the well-established premise that the State does not have criminal jurisdiction in

6

Indian County except in limited circumstances. *McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020); *Ross v. Neff,* 905 F.2d 1349, 1352 (10th Cir. 1990) (citing 18 U.S.C. § 1152) ("Indian country is subject to exclusive federal or tribal criminal jurisdiction."); *Nevada v. Hicks,* 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) ("although Indian reservations are located within the territory of the State, States presumptively lack both civil and criminal jurisdiction over tribal members for activities that occur within reservation boundaries."). Plaintiff offers no reason as to why this is one of those limited circumstances or how the Supreme Court's ruling in *Castro-Huerta*[2] gave the State jurisdiction over Indians (such as Barrick) in Indian Country.

Plaintiff next argues that Judge Jackson erred in finding that the Defendants' authority was derived from the Choctaw Nation, not the State of Oklahoma. Plaintiff's only argument to support this point is that this premise "presupposes" that the existence of tribal authority results in the removal of all state authority. Judge Jackson thoroughly considered whether an officer retains state authority while exercising tribal authority and concluded that the question was "one of primacy, not numerosity." (Doc. 224, p. 10). Judge Jackson also emphasized that the overriding question in this case was which official duties took precedent. (Doc. 224, p. 12). Plaintiff concedes that the officers were not acting solely under the color of state law. (Doc. 224, p. 12). Plaintiff also has cited no evidence or case law that contradicts that Defendant Hannah only had jurisdiction over Barrick due to his tribal commission. It is not assumed that all state authority is removed because tribal authority exists, but in this case the Defendant

---

[2] The obvious key distinction being that Castro-Huerta was a Non-Indian. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022).

only had proper authority because of his status as a duly appointed tribal commissioned Choctaw tribal police officer. Thus, these official duties took precedent.

Plaintiff's continued reliance on her belief that Defendants were wearing "two hats" at the time of the arrest and thus, were acting under the color of state law fails for similar reasons. Again, Plaintiff ignores the relevant question—which official duties took precedence. (Doc. 224, p. 12). The only reason that Defendants even had authority over Barrick was due to their tribal commissions, meaning it was their tribal authority, not their state authority, that allowed them to undertake law-enforcement action vis-à-vis Barrick. Plaintiff also claims that it is widely understood that "a cross-deputized officer can have authority to simultaneously act under the state's law, the tribe's law, and the federal government's law." However, her only support for such statement is her own exhibit, which is not binding on this Court, nor does it actually address the core issue, which is which official duties took precedence. (Doc. 224, p. 12). As a matter of clearly established law, it would have been illegal for Defendant officers to "wear a state hat" as they arrested Barrick (Indian) in Indian Country. *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).

Finally, Plaintiff argues that Judge Jackson "effectively held that if Defendants exercised any tribal authority, it result[s] in the total absence of state color." (Doc. 226, p. 8). Like her previous arguments, it is again unclear how such a statement supports any conclusion that Defendants acted under authority granted to them by state law, not tribal law. As Judge Jackson pointed out, even if such powers mutually existed, the Defendants' conduct in this scenario falls under their duties pursuant to their tribal commissions. The facts show that shortly after the Defendants arrived, the Defendants found out Barrick was a tribal member.

(Doc. 165, p. 6, ¶ 17). Due to his status, Defendant Hannah did not have "any jurisdiction whatsoever"[3] over Barrick through the State, but instead only had such jurisdiction through his tribal commission. (Doc. 165, p. 6-7, ¶¶ 17-19). Their knowledge of jurisdiction is further supported by the fact that they called a tribal officer to further assist them. (Doc. 165, p. 7, ¶ 19).

Plaintiff goes on to cite 11 O.S. § 34-103(C), the State-Tribal Relations Act, and two Oklahoma Attorney General opinions as apparent support for her belief that Defendants were acting under the color of state law. However, none of these authorities even remotely address that issue. 11 O.S. § 334-103(C) addresses intergovernmental agreements between municipalities and counties, which are fundamentally different than any agreement between a county and a tribe or a state law enforcement agency and a tribe. The State Tribal Relations Act outlines the State's ability to enter into agreements with the tribes and **does not** ever address the issue of officers acting under the color of state law. Finally, Plaintiff cites to two (2) Attorney General ("AG") Opinions. The first AG Opinion is not even related to tribal jurisdiction. *See* 2000 OK AG 58. The second AG Opinion addresses whether cross-deputation agreements violate Article II, Section 12, of the Oklahoma Constitution. 1990 OK AG 32. Again, this opinion does nothing to support Plaintiff's position. Additionally, it directly finds that state law enforcement officers, absent an appropriate cross-deputation agreement can only investigate a federal or tribal crime inside Indian country as a private citizen and cannot operate as a law enforcement officer making arrests. *Id.* at ¶¶ 41-42.

---

[3] *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).

Plaintiff's final assertion is that a cross-deputation agreement alone is insufficient to transform a state officer into a tribal actor. (Doc. 226, p. 8 (quoting *Ouart v. Fleming,* 2010 WL 1257827 at *7)). Plaintiff provides no reasoning as to how this single statement overrules the fact that the officers' authority in this case was derived from their status as duly appointed tribal police officers, not their status as state officers.

Plaintiff's objections consist of isolated case quotes and unsupported conclusions, none of which meaningfully address or undermine Judge Jackson's well-reasoned analysis and opinion. Judge Jackson correctly concluded that Barrick's status, as a tribal member, and the Defendants' status as tribal commissioned officers is the determinative factor in this case. It was tribal law, not state law, which gave Defendants' authority to exercise jurisdiction over Barrick (an Indian) in Indian country. Plaintiff fails to provide any authority that contradicts this central reasoning in any coherent or persuasive manner. Her objections should be overruled, and Judge Jackson's Report and Recommendation should be adopted in full.

**III.    This Court should adopt Judge Jackson's Report and Recommendation in full.**

For the foregoing reasons, the Court should overrule Plaintiff's objection and adopt Judge Jackson's comprehensive Report and Recommendation in its entirety. Judge Jackson carefully considered all briefing and arguments made at the hearing. His Report and Recommendation is grounded in both the facts of this case and the applicable clearly established case law. Plaintiff's objection is nothing more than a rehashed version of the arguments that were already made, thoroughly considered, and ultimately rejected by Judge Jackson. She does not provide any specific reason as to why Judge Jackson's findings should be disturbed.

Accordingly, Defendant Hannah asks that this Court adopt Judge Jackson's Report and Recommendation in full and dismiss all Plaintiff's claims against him with prejudice.

Respectfully Submitted,

*s/ Alejandra Brigida*
**ALEJANDRA J. BRIGIDA, OBA #35381**
**DEVAN A. PEDERSON, OBA#16576**
Assistant Attorneys General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
devan.pederson@oag.ok.gov
Alejandra.brigida@oag.ok.gov
*Attorneys for Defendant Warden Mark Hannah*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on this 6th day of August 2025, I electronically transmitted the attached document to the Clerk of Court via the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

*s/ Alejandra Brigida*
Alejandra Brigida