UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BARBARA BARRICK, as Special Administrator of the ESTATE OF BOBBY DALE BARRICK, deceased,** )<br>)<br>)<br>) | |
| **Plaintiff,** ) | Case No. CIV-23-129-JFH-GLJ |
| ) | |
| **v.** ) | |
| ) | |
| **DEPUTY MATTHEW KASBAUM, DEPUTY QUENTIN LEE, and WARDEN MARK HANNAH,** )<br>)<br>) | |
| ) | |
| **Defendants.** ) | |

**REPLY SUPPORTING PLAINTIFF'S OBJECTION
TO REPORT AND RECOMMENDATION [DKT. #224]**

Plaintiff Barbara Barrick ("Barrick" or "Plaintiff"), in furtherance of *Plaintiff's Objection to Report & Recommendation [Dkt. #224]* filed on July 23, 2025 **[Dkt. #226]**, hereby replies to the response briefs filed by Defendants Matthew Kasbaum and Quentin Lee **[Dkt. #227]** and Defendant Mark Hannah **[Dkt. #228]**, and would show the Court as follows:

## ARGUMENTS AND AUTHORITIES

**I.  DEFENDANTS' ARGUMENT – AND THE MAGISTRATE'S FINDING - THAT DEFENDANTS COULD NOT "WEAR TWO HATS" SIMULTANEOUSLY LACKS FACTUAL AND LEGAL SUPPORT.**

Defendants contend that they did not -- and legally could not -- simultaneously "wear two hats" (*i.e.*, state color and tribal color) when they "responded to th[e] incident [at Lori's Corner Store] and attempted to place Barrick in custody." **[*See* Dkt. #227, p. 6; Dkt. #228, p. 4]** [1] Plaintiff,

---

[1]  As sole support for their argument that "it would have been **illegal** for Defendant Officers to 'wear a state hat' as they arrested Barrick … in Indian country," Defendants cite *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990). This argument fails for two reasons. First, *Ross* dealt with the question of whether county officers had "**independent** authority [as county officers] to enforce [the **state**'s] own laws over Indians on Indian land." *Id.* The case at bar, however, involves state law enforcement officers who possess "multi-jurisdictional credentials" because of the **additional authority** provided to them by two cross-deputization agreements (which, *inter alia*, permitted Defendants to arrest Indians on Indian Land for suspected violations of tribal law). *See, e.g.,* 57 Tulsa L. Rev. 553, 568 (2022).

Secondly, the language in *Ross* upon which Defendants rely (*i.e.*, that "state criminal jurisdiction in Indian country is limited to crimes committed by non-Indians against non-Indians ... and victimless crimes by non-Indians") is outdated law. Indeed, the U.S. Supreme Court has specifically rejected any presumption against state jurisdiction (including any application of the General Crimes Act to oust state jurisdiction over Indians). *See Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2491 & 2495, n. 2 (2022) (recognizing Oklahoma's concurrent jurisdiction over crimes committed by non-Indians against Indians in Indian Country). Furthermore, as noted by the Presiding Judge of the Oklahoma Court of Criminal Appeals:

> Although *Castro*-Huerta involved a non-Indian, the Supreme Court made clear that the text of this statute would not preempt state jurisdiction against an Indian in similar circumstances:
>
> To the extent that a State lacks prosecutorial authority over crimes committed by Indians in Indian country (a question not before us), that would not be a result of the General Crimes Act. Instead, it would be the result of a separate principle of federal law that, as discussed below, precludes state interference with tribal self-government. ... *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142-43, 145 (1980); *McClanahan v. Arizona Tax Comm'n,* 411 U.S. 164, 171–172 (1973).

2

however, has come forward with additional facts (supported by an abundance of testimony and other evidence) from which a juror could reasonably conclude that **Defendants were acting under color of state law <u>at all times</u>** throughout the above-referenced incident -- *irrespective* of whether there was also some temporary manifestation of tribal color during the encounter. **[*See* Dkt. #126-1, ¶¶ 96, 100-103 & 106-126;** *see also* **Dkt. #195-1, 111:24 – 112:2; Dkt. #195-9, 169:3-18; Dkt. #195-39, p. 4 (providing that when assisting other law enforcement agencies, MCSO deputies remain "governed … by the policies and procedures of [MCSO]")]** Defendants' assertion that Plaintiff's additional facts "lack … relevance" or "evidentiary support" **[Dkt. #227, pp. 3-4; Dkt. #228, pp. 4-6, ¶ I]** is bald, conclusory, and wholly unsupported. It should therefore be disregarded.

    **II.**    **MAGISTRATE JACKSON ERRED IN FINDING THAT DEFENDANTS HAD ANY "OFFICIAL DUTIES" AS "TRIBAL OFFICERS," OR THAT ANY SUCH DUTIES TOOK PRECEDENCE OVER DEFENDANTS' "OFFICIAL DUTIES" AS STATE LAW ENFORCEMENT OFFICERS.**

In his *Report and Recommendation*, Magistrate Jackson quoted from *Screws v. U.S.*, 325 U.S. 91, 111 (1945) (which held that the "[a]cts of officers who undertake to perform their official duties" amounts to state action) and *David v. City & Cnty. Of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (which held that "one must examine the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties"). **[Dkt. #224, pp. 11-12]** Opining, however, that these holdings "appear[] to be an incomplete statement of the law for our context" in *this* case, Magistrate Jackson posited that "the issue is not whether an officer's conduct is related to official duties, but rather **which** official duties" -- state or tribal -- "the officer's conduct falls under." **[*Id.* at p. 12 (stating, in similar fashion, that "[t]he overriding question here … is whether the officers were acting under color of tribal law or state law, or both, *i.e.*, which <u>official duties</u> t[ook] precedence" [*id.*])]** Thus, the *Report and Recommendation*'s ultimate conclusion (*i.e.*, that "Kasbaum, Lee, and Hannah were acting under Tribal authority" **[*id.***

---

   [142 S.Ct.] at 2495, n. 2. Thus, under the General Crimes Act, courts must now apply the so-called *Bracker* balancing test to determine if state jurisdiction is preempted in cases of crimes committed by Indians in Indian Country.

*State ex rel. Ballard v. Crosson*, 540 P.3d 16, 18-19 (Okla.Cr. 2023) (Rowland, P.J., concurring); *see also City of Tulsa v. O'Brien*, --- P.3d ---, 2024 WL 5001684 *16 & n. 6 (Okla.Cr.) (Musseman, V.P.J., concurring) (noting there is "no reason for th[e] rationale [in *Castro-Huerta*] to not apply just as fully to the general exercise of State police power in Indian country").

**at p. 13]**) necessarily reflects a finding by Magistrate Jackson that the "official duties" of Defendants "as tribal officers" **[see id. at p. 10]** took precedence in this case.[2] This finding, however, rests on the erroneous premise that Defendants had **any** "official duties" as "tribal officers."

The phrase "official duties" refers to one's "official act[s]," and "means whatever is done under color of or by virtue of [one's] office." *Alford v. McConnell*, 27 F.Supp. 176 (N.D.Okla. 1939). In other words, the term "official duties" refers to those acts reasonably required to be performed by virtue of, and within the scope of, the functions of one's office of employment. In Oklahoma, state, county, and municipal law enforcement officers are considered to be "office" holders. 2000 OK AG 58, ¶ 4. Furthermore, under OKLA. CONST. ART. II, § 12, law enforcement officers are prohibited from holding more than one such office at a time. Therefore, a county law enforcement officer may not simultaneously hold the "office" of tribal law enforcement officer. Exercising authority under a cross-deputization agreement, however, does **not** turn a county or state law enforcement officer into a "tribal officer." *See, e.g.,* 22 Okl. Op. Atty. Gen. 71, 1991 WL 567868 at * 8, ¶ 3 (holding that "[a] state law enforcement officer may enforce tribal law on lands within tribal jurisdiction pursuant to a tribal-state cooperative agreement under 74 O.S. § 1221 without offending without offending Art. II, § 12 of the Oklahoma Constitution where" – such as here – "the agreement creates no new office but only increases the authority of state and local officers to enforce tribal laws"). It necessarily follows, then, that if Defendants only held one "office" (as state law enforcement officers), then the only "official duties" they had were the duties of state – not tribal - officers.

## CONCLUSION

Given the ever-increasing prevelance of state-tribal cross-deputization agreements, it is critically important that this Court correct the Magistrate's error. State officers, including Defendants, should not be permitted to opt out of Section 1983.

---

[2]     Defendants rely heavily on Magistrate Jackson's framing of the issue in asking this Court to adopt the *Report and Recommendation*. **[*See, e.g.,* Dkt. #227, p. 6 (identifying the "core issue" as turning on "which official duties took precedence")]**

Respectfully submitted:

CAMP LAW FIRM

By: /s/ Christopher L. Camp
Christopher L. Camp, OBA #18541
7122 South Sheridan Road, Suite #2-382
Tulsa, Oklahoma  74133
Telephone: (918) 200-4871
Facsimile: (918) 340-6799
E-mail: camplawfirm@gmail.com

and

GARRETT LAW

By:   /s/ D. Mitchell Garrett, Jr.
D. Mitchell Garrett, Jr., OBA# 20704
320 South Boston Avenue, Suite 825-G
Tulsa, Oklahoma  74103
Telephone: (918) 221-6190
Facsimile: (918) 340-6799
E-mail: mitchell@garrettlawcenter.com

**Attorneys for Plaintiff Barbara Barrick, Special Administrator of the Estate of Bobby Dale Barrick, deceased**

5

**CERTIFICATE OF DELIVERY**

  I hereby certify that on August 15, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Devan Pederson, Esq. | devan.pederson@oag.ok.gov |
| Alejandra J. Brigida, Esq. | alejandra.brigida@oag.ok.gov |
| Office of the Attorney General | |
| 313 N.E. 21st Street | |
| Oklahoma City, Oklahoma  73105 | |
| | |
| Robert S. Lafferrandre, Esq. | rlafferrandre@piercecouch.com |
| Randall J. Wood, Esq. | rwood@piercecouch.com |
| Shelia G. Jessee, Esq. | sjessee@piercecouch.com |
| PIERCE, COUCH, HENDRICKSON, | |
|  BAYSINGER & GREEN, L.L.P. | |
| 1109 North Francis Avenue | |
| Oklahoma City, Oklahoma  73106 | |
| | |
| Jamison C. Whitson, Esq. | jcw@czwlaw.com |
| Howard T. Morrow, Esq. | htm@czwlaw.com |
| COLLINS, ZORN & WAGNER, PLLC | |
| 429 N.E. 50th Street, Second Floor | |
| Oklahoma City, Oklahoma  73105 | |

/s/ Christopher L. Camp
Christopher L. Camp, OBA #18541