IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA BARRICK as Special Administrator of the Estate of Bobby Dale Barrick,<br><br>**Plaintiff,**<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF MCCURTAIN COUNTY, OKLAHOMA, et al.,<br><br>**Defendants.** | Case No. 23-CV-129-JFH-GLJ |

## OPINION AND ORDER

Before the Court is the Report and Recommendation of United States Magistrate Judge Gerald L. Jackson. Dkt. No. 224. The Magistrate Judge recommends that the Motion for Summary Judgment and Brief in Support of Defendants Matthew Kasbaum and Quentin Lee [Dkt. No. 165] and the Motion for Summary Judgment and Brief in Support of Defendant Mark Hannah [Dkt. No. 167] be granted. *Id*. Plaintiff Barbara Barrick ("Plaintiff") filed an objection to the Report and Recommendation. Dkt. No. 226. Defendants Kasbaum and Lee and Defendant Hannah filed responses in opposition to Plaintiff's objection. Dkt. Nos. 227 and 228. After seeking leave from the Court, Plaintiff filed a reply. Dkt. No. 231. For the following reasons, Plaintiff's objection is overruled, the Report and Recommendation is accepted and adopted by this Court, and Defendants' motions for summary judgment are granted.

## PROCEDURAL BACKGROUND

Plaintiff, as Special Administrator of the Estate of Bobby Dale Barrick, filed this case on April 20, 2023 alleging claims of excessive force and wrongful death arising under 42 U.S.C. § 1983 against Defendant Matthew Kasbaum, Defendant Quentin Lee, and Defendant Mark Hannah,

along with three other defendants. Dkt. No. 2. The other defendants have since been dismissed from the case and only the claims against Defendants Kasbaum, Lee, and Hannah remain. *See* Dkt. Nos. 22, 48, 50. Defendants Kasbaum, Lee, and Hannah filed motions for summary judgment. Dkt. Nos. 165, 167. Plaintiff filed responses in opposition to the motions, and then amended responses. Dkt. Nos. 197, 198, 203, 204. Defendants Kasbaum, Lee, and Hannah then filed replies. Dkt. Nos. 214, 217. The Magistrate Judge set the motions for summary judgment for hearing. Dkt. Nos. 218, 220. A hearing was held on June 11, 2025 and the Magistrate Judge took the motions under advisement. Dkt. No. 221. On July 9, 2025, the Report and Recommendation was issued recommending that the motions for summary judgment be granted, finding that Plaintiff could not maintain an action under § 1983 because Defendants were not acting under color of state law. Dkt. No. 224. Plaintiff timely filed an objection to the Report and Recommendation on July 23, 2025. Dkt. No. 226. Defendants Kasbaum, Lee, and Hannah filed responses to Plaintiff's objection on August 6, 2025. Dkt. Nos. 227, 228. Plaintiff filed her reply on August 15, 2025. Dkt. No. 231.

**FACTUAL BACKGROUND**

The undisputed material facts of this case are as follows.[1] On March 13, 2022, in Eagletown, Oklahoma, located in the Eastern District of Oklahoma and within the boundaries of Choctaw Nation, Defendant Kasbaum, a Sergeant with the Muskogee County Sheriff's Office, responded to a call at 4:30 a.m. to help Bobby Dale Barrick ("Barrick") with his truck that was stuck in mud. Dkt. No. 165 at 10. While Barrick appeared to be under the influence of some

---

[1] The Court notes that Plaintiff does not make specific objections to the Magistrate Judge's factual findings. Nonetheless, the Court sets forth its own factual findings upon review of the record.

intoxicating substance, Defendant Kasbaum did not arrest Barrick because his vehicle was immobilized and he was otherwise cooperative. *Id*.

That same evening, Barrick was dropped off at Lori's Corner Store in Eagletown, Oklahoma. *Id*. Although the store was closed, Barrick ran in through the back door. *Id*. Contractors, who were working inside the store at the time, chased Barrick as he broke through the glass front door of the store and ran out onto Highway 70. Dkt. No. 165 at 10-11. On Highway 70, Barrick got into the cab of an occupied semi-tractor trailer rig. *Id*. at 11. The truck driver shut down the rig and Barrick exited the cab of the truck. *Id*. Barrick then approached a vehicle behind the semi-tractor trailer occupied by a woman and children. *Id*. Barrick punched at the car window, grabbed onto the side view mirror, and then ultimately jumped onto the car as the woman drove. Dkt. No. 165 at 11. With Barrick still on top of the vehicle, the woman drove her vehicle into the parking lot of Lori's Corner Store. *Id*. The contractors then gained control of Barrick and hog-tied him with his hands behind his back and his ankles bound together. *Id*. at 11-12.

The Muskogee County Sheriff's Office ("MCSO") was notified of the incident and Defendants Kasbaum and Lee were dispatched to the scene. *Id*. at 12. In addition to being MCSO officers, Defendants Kasbaum and Lee were also cross-commissioned officers with the Choctaw Nation. Dkt. No. 165 at 14. Defendant Kasbaum and Lee arrived on the scene in MCSO vehicles and wearing MCSO uniforms. Dkt. No. 203 at 28-29. Upon arriving to the scene, Defendants Kasbaum and Lee saw that Barrick had been hog-tied and was yelling for help shouting, "they're going to kill me." Dkt. No. 165 at 12-13. Defendants Kasbaum and Lee removed Barrick's bindings and handcuffed Barrick. *Id*. at 13. Barrick was then able to stand and speak with the officers. Dkt. No. 165 at 13. Defendant Kasbaum requested Emergency Medical Services ("EMS") to respond to the scene as it was apparent that Barrick had some injuries related to being

hog-tied. *Id*. Officers then located Barrick's Choctaw Nation Membership Card in his pocket, confirming his status as an Indian. *Id*. Defendant Kasbaum and Lee then placed Barrick in the back of Defendant Lee's patrol vehicle while they continued their investigation. *Id*. at 14.

Defendant Hannah, an Oklahoma Game Warden and Tribal Police Officer of the Choctaw Nation with a Special Law Enforcement Commission, then arrived on the scene. Dkt. No. 165 at 14. Defendant Hannah arrived in his state issued vehicle wearing his Oklahoma Game Warden uniform. Dkt. No. 203 at 29-30. Once Defendant Hannah arrived, he and Defendants Kasbaum and Lee attempted to remove Barrick from the back of Defendant Lee's patrol vehicle to be seen by an Emergency Medical Technician ("EMT"). *Id*. at 15-17. During this time, Barrick was noncompliant and combative with the officers, and the officers attempted various methods to subdue him and remove him from the vehicle. *Id*. Barrick then became unconscious and EMS was able to assess him and transport him to McCurtain Memorial Hospital where he was placed on a ventilator before he was transferred to Paris Regional Medical Center where he ultimately died. Dkt. No. 165 at 19-20. Barrick's cause of death was listed as acute respiratory failure due to acute kidney injury, with contributing factors of bipolar disorder, schizophrenia, and hypertension. *Id*. at 20.

## DISCUSSION

### I. Standard of Review for Report and Recommendation

After a Report and Recommendation has been issued, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with

instructions." *Id.*; *see also*, 28 U.S.C. § 636(b)(1).  However, any objections not properly raised are waived for purposes of review by the District Court. *Klein v. Harper*, 777 F.3d 1144 (10th Cir. 2015); *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022).  An objection to a recommendation is properly raised if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.*; *see e.g., Lopez v. Colorado*, No. 19-CV-0684-WJM-MEH, 2020 WL 1074756, at *1 (D. Colo. Mar. 6, 2020).[2]  "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." *Davis v. GEO Grp. Corr., Inc.*, No. CIV-16-00462-PRW, 2023 WL 2536727, at *1 (W.D. Okla. Mar. 16, 2023) (citing *Summers v. State of Utah*, 927 F.2d 1165, 1167-68 (10th Cir. 1991)).  The Court also notes that "[m]ere regurgitation of original arguments does not trigger the Court's obligation to perform de novo review." *United States v. Kirby*, No. 23-CR-026-JFH, 2023 WL 3956685, at *2–3 (E.D. Okla. June 12, 2023).

**II.   Plaintiff's Objections**

Generally, Plaintiff objects to the Magistrate Judge's finding that Plaintiff cannot maintain a viable claim under 42 U.S.C. § 1983 because Defendants were acting under Tribal authority, rather than under color of state law.  Dkt. No. 226 at 2-3.  Section 1983 creates a federal cause of action for damages for violations of federal law committed by individuals acting "under color of state law."  42 U.S.C. § 1983.  The "under color of state law" requirement is "a jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citing *Polk*

---

[2] "Unpublished opinions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A), 28 U.S.C.; *see also United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

*County v. Dodson*, 454 U.S. 312, 315 (1982)). Acting "under color of state law" requires that the defendant in a § 1983 action exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. (quoting *West v. Atkins*, 487 U.S. 42, 48-49 (1988)). "A § 1983 action is unavailable for persons alleging deprivation of constitutional rights under color of tribal law." *Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006) (internal citations omitted). Therefore, as identified by the Magistrate Judge and as argued by the parties, the relevant question here is whether Defendants were acting under color of state law or Tribal law during the relevant time period.

Under this general objection to the Magistrate Judge's finding that Defendants were not acting under color of state law, Plaintiff sets forth five (5) particular objections. The Court will address each of these objections in turn below.

### a. Plaintiff's First Objection

Plaintiff first objects that "[t]he Magistrate Judge's finding that Defendants 'were not acting under color of state law' was not the product of an intensely 'fact-bound inquiry' [but rather] it relied on a single 'determinate factor,' and completely ignored over two dozen highly pertinent facts." Dkt. No. 226 at 6. As noted earlier, Plaintiff does not dispute the Magistrate Judge's factual findings, but rather objects to the Magistrate Judge's failure to consider all facts before it. Dkt. No. 226 at 6. Specifically, Plaintiff states that in her response to Defendants' summary judgment motions she set forth thirty-two (32) additional facts that bear upon the issue of whether Defendants were acting under color of state law. *Id*. Plaintiff notes that in finding that Defendants were not acting under color of state law, the Magistrate Judge "considered only five (5)" of her stated facts, "inexplicitly ignoring the other twenty-seven (27")." *Id*. Plaintiff argues that this runs contrary to case law which requires the Magistrate Judge to accept all of her stated facts as true

and to draw all reasonable inferences in her favor. *Id*. at 6-7. This is not the correct standard applicable to this case.

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Plaintiff, as the nonmoving party, is afforded the benefit of the Court viewing the evidence and drawing inferences in the light most favorable to Plaintiff. The Court notes that the Magistrate Judge explicitly acknowledged this standard in the Report and Recommendation. Dkt. No. 224 at 3. The Court is not required, however, to accept all of Plaintiff's stated facts as true. Rather, the law is that when the nonmoving party fails to file a response to a motion for summary judgment, the nonmoving party waives the right to controvert the facts asserted in the summary judgment motion and the Court "should accept as true all material facts asserted and properly supported in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1195, (10th Cir. 2002). This clearly does not apply here.

The Court further notes that the standard is whether a genuine dispute exists about a *material* fact, not whether a dispute exists as to any fact alleged by the parties. "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id*. (quoting *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)). Additionally, Plaintiff does not point to, nor is this Court aware of, any controlling law which states that a single fact cannot be outcome-determinative in deciding a motion for summary judgment.

Upon an independent review of all the facts before the Court, the Court finds that the facts indisputably show that Defendants were acting in a law enforcement capacity—or under the color of some law. The relevant question, however, is *what* color of law Defendants were acting—state or Tribal.

When carrying out an arrest of an Indian in Indian country, law enforcement officers necessarily act under color of Tribal law by virtue of cross-deputization agreements. This is because a state law enforcement officer has no jurisdiction to arrest an Indian in Indian country. *See e.g., Ross v. Neff*, 905 F.3d 1349, 1353 (10th Cir. 1990). While facts highlighted by Plaintiff—such as how Defendants were dressed, what vehicles they drove, or how they were dispatched to the scene—are relevant to establish that Defendants were acting in a law enforcement capacity, they do not establish the particular authority Defendants were acting under. Rather, the material facts necessary to establish this are Barrick's status as an Indian, the location in Indian country, and the cross-deputization of Defendants. Because Defendant was an Indian, the arrest took place in Indian country, and Defendants were cross-deputized, Defendants were necessarily acting under color of Tribal law in effecting Barrick's arrest. For these reasons, the Court overrules Plaintiff's objection.

### b. Plaintiff's Second Objection

Second, Plaintiff objects that the Magistrate Judge erroneously relied upon the premise that "state courts generally have no jurisdiction to try Indians for conduct committed in Indian Country." Dkt. No. 226 at 7. In support of this contention, Plaintiff cites to *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) for the proposition that "a state has jurisdiction over all of its territory, including Indian country." *Id*. Plaintiff further argues that *Castro-Huerta* leaves the issue

undecided of whether a state's jurisdiction to prosecute Indians for crimes under the General Crimes Act is preempted. *Id*.

The Court does not find that the Magistrate Judge's statement of law is erroneous. It is well established that, except in limited circumstances, the state does not have criminal jurisdiction in Indian country. *See McGirt v. Oklahoma*, 591 U.S. 894, 898 (2020) (citing *Negonsott v. Samuels*, 507 U.S. 99, 102-103 (1993)); *see also Ross*, 905 F.2d at 1353 ("The Supreme Court has expressly stated that state criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians . . . and victimless crimes by non-Indians.'") (internal citation omitted). *Castro-Huerta* did not overrule *McGirt*, but rather established concurrent state and federal jurisdiction for crimes committed by non-Indians against Indians in Indian country. *See Castro-Huerta,* 597 U.S. at 656. There is no factual dispute as to Barrick's status as an Indian or that the events occurred in Indian country and, therefore, the Court finds that this argument is of no effect. Accordingly, this objection is overruled.

### c. Plaintiff's Third and Fifth Objection

Plaintiff's third and fifth objections are related. In her third objection, Plaintiff challenges the Magistrate Judge's finding that Defendants' law enforcement authority was "derived from the Choctaw Nation, not the State of Oklahoma." Dkt. No. 226 at 7. In support of this objection, Plaintiff argues that "[t]his premise erroneously presupposes that the existence of any tribal color necessarily results in the removal of all state color," citing to her fifth objection. *Id*. Plaintiff's fifth objection relates to the Magistrate's holding that Defendants were not "exercising power possessed by virtue of state law and made possible only because [they were] clothed with the authority of state law." Dkt. No. 226 at 8. Specifically, Plaintiff states that the Magistrate Judge "effectively held that if Defendants exercised any tribal authority, it result[ed] in the total absence

of state color." *Id*. Plaintiff argues that this is erroneous because to hold any Tribal authority, Defendants had to maintain state law enforcement power, noting that Defendants "could not be cross-deputized with a tribe if they were not already state law enforcement officers." *Id*.

While being a state law enforcement officer may be a prerequisite for cross-deputization, the authority to arrest Indians in Indian country is not derived from state law, but from Tribal law. Stated another way, in the absence of Tribal authority, state law enforcement officers do not have jurisdiction to arrest Indians in Indian country. Therefore, while law enforcement officers may maintain state law enforcement power, they necessarily exercise Tribal authority when arresting an Indian in Indian country. Here, Defendants only had authority to arrest Barrick—an Indian in Indian country—under the authority of Tribal law. The Court concurs that this authority was derived from the Choctaw Nation, not the State of Oklahoma. Accordingly, the Court further finds that in arresting Barrick under Tribal authority, Defendants were not exercising power possessed by virtue of state law and made possible only because they were clothed with the authority of state law. For these reasons, Plaintiff's third and fifth objections are overruled.

### d. Plaintiff's Fourth Objection

Finally, Plaintiff objects to the Magistrate Judge's holding that Defendants cannot "wear two hats" simultaneously, arguing that it is both factually and legally erroneous. Dkt. No. 226 at 8. However, this is not what the Magistrate Judge held. While acknowledging that the officers *may* wear two hats simultaneously, the Magistrate Judge found that "the question is one of primacy, not numerosity." Dkt. No. 224 at 11. Specifically, the Magistrate Judge found that the overriding question is which official duties—those of Tribal or state law—took precedence. *Id*. at 12.

Again, regardless of whether Defendants maintained state law authority, Defendants, in arresting an Indian in Indian country, were operating under Tribal law. Under these undisputed facts, the Court concurs that Tribal law took precedence. For this reason, this objection is also overruled.

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's objection [Dkt. No. 226] is OVERRULED, the Report and Recommendation is ACCEPTED AND ADOPTED, and the Motion for Summary Judgment and Brief in Support of Defendants Matthew Kasbaum and Quentin Lee [Dkt. No. 165] and the Motion for Summary Judgment and Brief in Support of Defendant Mark Hannah [Dkt. No. 167] are GRANTED.

Dated this 29th day of September 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE